GEORGIA,
Chatham Co.
Jan. 1809.

Adm. of Sheftall
vs.
Adm. of Clay.

*Minutes of Superior Court, letter G. p.* 83.

*January Term,* 1809.

ADMINISTRATORS of SHEFTALL

*vs.*

ADMINISTRATORS of CLAY.

By *Charlton*, Judge.

A new trial is moved for in this case :

1. Because the court refused to admit as evidence to go to the jury, a joint and general bond of *Mor.* and *Levi Sheftall* to *Joseph Clay*, dated the 23d Dec. 1774, and payable the 1st of April following, for the purpose of explaining an indorsement on the note on which this action was founded, calculated, as defendants allege, to destroy the plaintiff's right of action.

2. Because the court refused to admit as evidence to go to the jury a bond of *Mor. Sheftall* to *Joseph Clay* and *Joseph Habersham*, dated the 7th June, 1774, for £49, 19 shillings, which by assignment, became the property of *Clay*, and was a just set-off against the plaintiff's demand.

3. Because the court rejected as evidence, an assignment dated 19th July, 1799, by *Edward Telfair* and *William Clarke* to *Joseph Clay*, then composing the firm of *Clay, Telfair & Co.*, of all their interest in a debt secured by judgment against *Mor. Sheftall* and one *Samuel Dalpaget*, which judgment was in the year 1801 revived against the present plaintiffs as administrators, and is now in full force, and which judgment by such assignment became the sole property of *Joseph Clay*, and was sufficient to extinguish the plaintiff's demand.

4. Because the court charged the jury that the plaintiffs

GEORGIA,
Chatham Co.
JAN. 1809.

Adm.of Sheftall
vs.
Adm. of Clay.

were entitled to a verdict, although upwards of twenty years had elapsed from the date of the note to the bringing of the action, and no proof was offered of any demand in the mean time, or a payment of any part of the debts, or subsequent promise to pay by the intestate or his administrators, in which particular the defendants conceive the jury were misdirected.

5. Because the verdict was contrary to law, to equity, and to evidence.

I adhere to my opinion, that the joint and several bond of *Mor.* and *Levi Sheftall* was not proper evidence to go to the jury; an action had been brought upon this bond, and in April Term, 1799, there was a verdict for the appellants, *Mor.* and *Levi Sheftall.* It is not contended that this bond is in force, that *per se* it has any kind of operation, but it is said, that it may be introduced for the raising a presumption against the recovery of the note upon which this action is brought, because it appears from an indorsement on the note that it was offered in evidence in the suit on the bond, and from that circumstance, it was inferred that it was considered as a set-off, and prevented a recovery on the bond: this inference is not justified by the record, I am therefore bound to consider the bond as annihilated by the verdict, and as inadmissible evidence for any purpose whatever. I also adhere to my opinion, that the bond of *Mor.* *Sheftall* to *Joseph Clay* and *Joseph Habersham,* was not proper evidence to go to the jury, the rejection of this piece of evidence was founded upon a non-compliance with the requisitions of the 24th sect. of our judicial act on subject of sets-off; this bond was offered in evidence as a set-off, but I rejected it, because a copy of it had not been at the time of the filing of the answer: but it is said, it is only necessary to do this when a *balance* is claimed by the defendant, as no balance was claimed in the case, it was sufficient to give a general notice in the plea, of the existence of a counter debt: the act does not authorize this construction, the true construction is, if a balance is found for the defendant, he shall be permitted to enter up judgment

for it ; but if there should be found no balance, the set-off shall be considered as a discharge *pro tanto* or as an extinguishment, if the sums are in equilibrio ; in all cases, however, this section of the judicial act cannot be so construed as to dispense with the notice of the matter of the set-off, at the time of the filing the answer : dreadful injustice would result from a dispensation of such notice, the opposite side would be taken by surprise, without a fair opportunity of repelling absolute fraudulent or extinguished claims.

GEORGIA,
Chatham Co.
JAN. 1809.

Adm.of Sheftall
vs.
Adm. of Clay.

We ought to suppose this section incorporated in our judicial act, to prevent such consequences ; even by the English laws the bond offered in evidence, under similar consequences, would have been rejected by the court.

It was not pleaded in bar, and if it was intended to be given in evidence under the general issue, the stat. of Geo. 2. ch. 22, requiring that notice be given of the particular sum intended to be set off, and on what account it was due. *Quacunque via data*, this bond was properly rejected as evidence upon the doctrine of sets-off.

The 25th section of our judicial act, declaring that all bonds, specialties, notes, and other liquidated demands, bearing date since the 9th day of June, 1791, shall be negotiable by indorsement. This is an innovation upon the maxim, that a chose in action cannot be assigned, and the counsel opposed to the rule in this case say, that admitting that a regular notice had been given of this bond as a set-off, yet as it has been assigned subsequent to the 9th June, 1791, the court must recognise the common law maxim, and therefore pay no attention to the interest of the assignee.

I am, however, of this opinion. For supposing the common law were to govern on this subject, of the assignment of choses in action, antecedent to the judicial act of 1799, yet I am supported by the authorities in saying, that the common law jurisdiction would have looked at the real right and interest of the *assignee*, and not to the person of the *assignor*, from whence the right had emanated. To this extent have the courts of common law taken notice of trusts. Courts of

GEORGIA,
Chatham Co.
JAN. 1809.

Adm. of Sheftall
vs.
Adm. of Clay.

equity from the earliest times, thought the doctrine of the non-assignment of a chose in action too absurd for them to adopt, and therefore they have always acted in direct opposition to it. Indeed before the courts of law ventured to go as far as the maxim cases have gone, we find in 2 Cro. 180, the assignment of a chose in action, allowed in the case of the crown. In 12 Mod. 554, the court speaks of an assignment of an apprentice, or an assignment of a bond, as things which are good between the parties, and to which they must give their sanction and act upon. So an assignment of a chose in action has always been held as good consideration for a promise ; it was so held by all the judges of England in Monsdale *vs.* Birchell, 2 Blk. 820; though the debt assigned was uncertain. After these cases, we may venture to say (as was said by Mr. *J. Buller*, in Master *vs.* Miller, 4 T. Rep. 341,) that the maxim was a bad one, and that it proceeded on a foundation which fails ; but still (adds the same judge,) that though the courts of law have gone the length of taking notice of assignment of choses in action, and of acting upon them, yet in many cases they have adhered to the formal objection, that the action should be brought in the name of the *assignor*, and not of the *assignee*. I see no use (continues the judge) or convenience in preserving the shadow, when the substance is gone, and that it is merely a shadow, is apparent from the latter cases, in which the courts have taken care that it shall never work injustice. The cases alluded to by this learned judge, are, Bottomly *vs.* Brook, decided in the court of common pleas, 22 Geo. 3. Rudge *vs.* Birch, in the court of king's bench, 25 Geo. 3. Webster *vs.* Scales, all all of which are cited in the leading case of Winch *vs.* Keely, 1 Term Rep. 20, 21, 22. The doctrine in these cases, is pushed as far as it was in *Ex parte* Byas. 1 Atk. Rep. 124, where it was held, that the assignment of a chose in action was good, even though the assignor afterwards became a bankrupt.

I have taken the necessary pains to investigate this doctrine, in order that it may be now understood that the assign-

ees of bonds, bearing date antecedent to the 9th June, 1791, cannot sue it in their own names, and that the action must be brought *pro forma* in the name of the assignor ; yet that the assignee will be considered as the *real* party, and his interest alone taken notice of. This debt having been vested by assignment, in *Joseph Clay*, I should therefore have admitted it as a set-off, in an action brought against him by the present plaintiff, who was an obligor of the bond. I adhere likewise to the opinion expressed on the trial, that the assignment of the judgment mentioned in the third ground of the rule, was not proper evidence to go to the jury. This was the assignment of a judgment, obtained by *Joseph Clay*, *Edward Telfair*, *Samuel Elbert*, and *William Clark*, of Savannah, merchants and copartners, against *Mordecai Sheftall* and *Samuel Dalpaget*, and this judgment which was obtained by the confession of *Mordecai Sheftall*, to operate upon certain conditions expressed in the confession, indorsed upon the original process, and is dated the 15th March, 1788. This judgment became dormant ; but was awakened, as it is said by a *sci. fa.* brought in the name of *Joseph Clay*, *Jun. Edward Telfair*, and *William Clark*, known, as the *sci. fa.* expresses it, by the firm or copartnership of *Clay*, *Telfair*, and *Co.* This *sci. fa.* is dated the 15th Oct. 1799. By an assignment dated ———— this judgment is referred to and transferred by *Edward Telfair* and *William Clarke*, to one of the copartners, *Joseph Clay*. The assignment, it is contended, completely vests the right to this judgment in the partner, *Joseph Clay*, and therefore may be set-off against the demand of the judgment debtor. I cannot assent to this, without impairing the transcendant authority of a record ; without impairing the fundamental principles of the contract of partnership ; without subverting the best established rules of evidence.

1. The admission of this testimony would impair the authority of a record, the judgment is confessed to *Clay*, *Telfair*, *Elbert*, and *Clarke*, the *sci. fa.* to receive this judgment, is brought in the names of *Clay*, *Telfair*, and *Clarke*, without

GEORGIA,
Chatham Co.
JAN. 1809.

Adm.of Sheftall
vs.
Adm. of Clay.

GEORGIA,
Chatham Co.
JAN. 1809.

Adm. of Sheftall
vs.
Adm. of Clay.

any suggestion of the death of *Elbert*, or their right to sue for the debts by survivorship. From what data am I therefore to presume, that this is the *same firm* which obtained the judgment, or, that they are the survivors of that firm? I cannot collect such knowledge from the record, and will any lawyer tell me that it is to be obtained from facts extrinsic or *dehors* the record? can I travel but of the record to establish a fact, which will falsify it? no, I cannot. I am therefore bound by principles of law, to consider this *sci. fa.* as having revived a judgment obtained by *Clay*, *Telfair*, and *Clarke*, copartners under the firm of *Clay*, *Telfair*, and *Co.*, and not as having revived a judgment obtained by *Clay*, *Telfair*, *Elbert*, and *Clarke*, copartners under the firm of *Clay*, *Telfair*, and *Co.*

2. It impairs the fundamental principles of the contract of copartnership.

When a partner drops off, it produces a dissolution of the house. There must be a renewal of the contract among the surviving copartners, and the world must be notified of the change in the relation of the firm. In no case can the representatives or executors of the deceased partner associate with the surviving copartners. 2 Salk. Rep. 444.

If one partner die, though the debts and effects survive, yet the survivor is considered in equity barely as a trustee for the representatives of the deceased. *Laws of Partnernership*, 124.

Hence it appears, that if *Elbert* was dead when this was revived, or the assignment made, it was necessary that that fact should have been promulgated in the *sci. fa.*, not only that the public might know the change in the commercial *dynasty*, but in order that the representatives of the deceased partner might know the trustees against whom they would be permitted to resort in a court of equity.

In addition to this, I would also observe, that this species of assignment among the copartners, is not binding upon the general creditors, nor does it make any alteration in the

general liability of the house. Creditors cannot be bound by any arrangement among the partners.

This principle is settled in the case of Smith *vs*. Jameson, 6 Term Rep. 601. In that case, one of the partners applied trust money in the trade, with the privity of the other partner: they afterwards separated, and the partnership effects were assigned over to the first, who took upon himself the debts ; this was not considered as a discharge of the other partner, but both were considered as liable to make good the trust money. So, in this case, the assignment was a private arrangement of the partners, and could not as it affected other persons, convert that into a debt of one of the partners, which, in its original shape, was due to the whole firm. Great iniquity would flow from the adoption of a different doctrine ; if this kind were to have the power of vesting a right possessed by the whole firm, in any of them, the most palpable fraud would be practised, not only upon the general, but the creditors of the separate individuals of the firm.

Upon this ground, then, supposing *Elbert* to be a party to this assignment, I should doubt whether a right or interest was vested in *Clay*, for all the purposes contended for.

3. The admission of the assignment would subvert the best established rules of evidence.

No principle is better established than that, even a trivial variance, in setting out a record, or any written instrument, is fatal ; because it does not appear that the contract, given in evidence, is that on which the plaintiff declares. 4 Term Rep. 560. 3 Bos. and Pul. 559.

Now the *sci. fa.* does not set out the record truly ; there is a variance between that which is recited, and that which is on the files of this court. The *sci. fa.* sets out a judgment obtained by *Joseph Clay*, *Edward Telfair*, and *William Clarke*, of Savannah, merchants, and copartners ; there being no suggestion in the *sci. fa.*, or in the assignment of the judgment,

GEORGIA,
Chatham Co.
Jan. 1809.

Adm. of Sheftall
vs.
Adm. of Clay.

30

GEORGIA,    that it was revived or assigned by *Clay, Telfair*, and *Clarke*, as
Chatham Co.
JAN. 1809.   survivors of *Clay, Telfair* and *Co.*

Adm. of Sheftall    I must not only consider this *casus omissus*, as a fatal vari-
vs.              ance, but that neither the judgment is revived by the *sci. fa.*,
Adm. of Clay.    nor consequently transferred by the assignment.

*Rule discharged.*

*Harris* and *Bulloch*, for Plaintiffs.
*Woodruff*, for Defendants,